IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DEEP SOUTH OPERATING LLC**                        **PLAINTIFF**

**V.**                          **CAUSE NO.** 1:25-CV-109-MPM-RP

**DSO PROJECTS LLC; ONYX DIGITAL**
**FARMS LLC; BASHAM JOHNSON; PAUL**
**ROGERS; BRANDON BRYAN; AND**
**JOHN DOE DEFENDANTS 1-10**                 **DEFENDANTS**

## COMPLAINT

Plaintiff Deep South Operating LLC ("DSO") files its Complaint against DSO Projects LLC, Defendant ("DSOP"), Onyx Digital Farms LLC ("Onyx"), Paul Rogers, Basham Johnson, and Brandon Bryan as follows:

### I.     PARTIES

1. Plaintiff DSO is a Mississippi limited liability company whose sole member is an Alabama resident.

2. Defendant DSOP is an Alabama limited liability company whose only known member is an Alabama resident and may be served upon its registered agent and member, Brandon Bryan, at DSOP's registered office, 2719 29th Avenue North, Birmingham, Alabama 35207, or wherever he may be found.

3. Defendant Onyx Digital Farms LLC is an Alabama limited liability company whose members are Alabama residents and may be served upon its registered agent URS Agents LLC located at 3675 Crestwood Parkway, Suite 100, Duluth, Georgia 30096 or at its principal place of business located at 1500 1st Avenue North, Suite M128 A, Birmingham, Alabama 35205.

4. Defendant Paul Rogers is an Alabama resident and member of Onyx and may be served at Onyx's headquarters located at 1500 1st Avenue North, Suite M128 A, Birmingham, Alabama 35205, or wherever he may be found.

5. Defendant Basham Johnson is an Alabama resident and member of Onyx and may be served at Onyx's headquarters located at 1500 1st Avenue North, Suite M128 A, Birmingham, Alabama 35205, or at his residence at 578 Forrest Drive S, Birmingham, AL 35209-5308, or wherever he may be found.

6. Defendant Brandon Bryan is an Alabama resident and member of DSOP and may be served at DSOP's headquarters located at 2719 29th Avenue North, Birmingham, Alabama 35207, or wherever he may be found.

7. John Doe Defendants 1 – 10 include any individuals and/or entities either (a) described below of which DSO's claim(s) against the same are presently unknown and/or (b) who/that substantially contributed to and/or committed the below acts/omissions against DSO, the identities of which/whom are currently unknown to DSO.

## II. JURISDICTION AND VENUE

9. DSO and DSOP contractually agreed that the courts within this State have exclusive jurisdiction over all claims arising out of the subject Contract. *See* Contract as Ex. A, Section 14.4.

10. This Court has original jurisdiction because this action involves claims of violations of 18 U.S.C. § 1962 which mandates jurisdiction by this Court pursuant to 18 U.S.C. § 1964(a) and authorizes civil suit by DSO in this court pursuant to 18 U.S.C. § 1964(c).

11. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because it has original jurisdiction over DSO's claims brought pursuant to 18 U.S.C.

§ 1964. The remaining claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court is the proper venue for this lawsuit because transactions and/or affairs that make up the basis of this lawsuit occurred in Tishomingo County, Mississippi which is within the Northern District of Mississippi, Aberdeen Division, pursuant to 18 U.S.C. § 1965.

### III.     STATEMENT OF FACTS

#### A.     CONNECTING AND CONTRACTING

13.     Onyx Digital Farms LLC member owner Basham Johnson approached DSO member Brock Tompkins about DSO's provision of cryptocurrency hosting services at DSO's hosting site in Tishomingo County, Mississippi.

14.     DSO, through its representative Brock Tompkins, entered into a valid contract on October 11, 2023, with Basham Johnson, a member and owner of Onyx Digital Farms LLC (Onyx) and purportedly also DSOP's agent and/or member, in which DSO agreed to host DSOP's cryptocurrency mining operations at DSO's facility located at 751 County Road 989, Iuka, Tishomingo County, Mississippi 38852 (the old Yellow Creek Nuclear Plant site).

15.     On information and belief, DSOP and/or Onyx in turn contracted with BitFufu Inc. (FUFU), a Singapore-based digital currency mining service, in which FUFU paid DSOP and/or Onyx via international wire transfer for the ability to mine cryptocurrency at DSO's Tishomingo County, Mississippi facility as contemplated under the DSO Hosting Agreement. These wire transfers began as early as the date of execution of the DSO Hosting Agreement and continued through at least March 2025. As part of the FUFU agreement, FUFU paid Onyx and/or DSOP fees, expenses, and/or other certain funds described below that were due to DSO under the terms of the DSO Hosting Agreement for the Hosting Services provided by DSO ultimately to FUFU.

16.     Onyx, through its owners/members Basham Johnson and Paul Rogers, performed all contract negotiation and execution, negotiated the monthly power billing, paid DSO for the amounts due under the DSO Hosting Agreement, and performed all aspects of DSOP's obligations under the DSO Hosting Agreement until approximately March 2025 when material breaches to the Hosting Agreement resulting in DSO's termination of the same. Notices of the termination and of all breaches, along with countless other communications for the DSO Agreement all went through Johnson and Rogers. It was not until late April 2025 that DSO first heard from anyone else claiming to be acting on behalf of DSOP, namely Brandon Bryan.

17.     On information and belief, Leon Shaw, a personal acquaintance of Rogers, served as a banker and/or financial agent for Environmental Litigation Group PC (ELG). ELG is a law firm located at 2160 Highland Suite 200, Birmingham, Alabama 35205. On information and belief, Shaw has access and authority to send and receive wires from ELG's account(s). Leon Shaw and ELG serve as the financial agents for Onyx, Rogers, Johnson, DSOP, and Bryan.

18.     Shaw also provided initial funding for Onyx's and/or DSOP's involvement in the DSO agreement. Shaw provided Onyx members Johnson and Rogers with all funding for the containers, transformers, and buildout of "Pad 1" of DSO's host site which was built in fall 2023 and fully online by November 1, 2023. On information and belief, Shaw did so in exchange for ELG being listed in the FUFU contract as the destination for FUFU's monthly hosting fees, the same fees that were ultimately due to DSO. Onyx members Johnson and Rogers could not repay Shaw, so they asked DSO to pay Shaw for the initial buildout of pad 1, which it did.

19.     Investigation into DSOP has revealed that its "headquarters" was in fact an apparently abandoned building owned by Shaw.

20. Regarding the FUFU agreement, at the direction of Onyx, FUFU electronically wired payments from outside the United States to ELG in Birmingham, Alabama which would disburse funds to Onyx who then dispersed some but not all of the funds to DSO. On information and belief, ELG would release funds at the direction of Johnson and/or Rogers. Johnson and Rogers were supposed to remove FUFU's funds from the ELG pass through following DSO's repayment of Shaw for the Pad 1 buildout, but never did.

## B. THE DSO DEAL GOES SOUTH

21. As part of the terms of the DSO Hosting Agreement, DSOP agreed to deliver a power deposit (the "Deposit") to DSO which DSO was entitled to apply toward any past due amounts owed by DSOP. *See* Hosting Agreement, Section 6.3. In such event, DSOP became obligated to immediately pay DSO all amounts necessary to replenish and restore the Deposit. The amount of the Deposit after the first month of the contract was $511,000.00 which became past due as of December 2023. To date, DSOP has not paid the Deposit despite Defendants receiving the deposit funds from FUFU for payment to DSO pursuant to the DSO Agreement. As a result, as of May 25, 2025, DSO is also due $147,178.39 in late fees pursuant to Section 6.4 of the contract. These late fees continue to accrue at the rate of 1.5% monthly.

22. The Hosting Agreement required DSOP to make payments to DSO for Hosting Facility, Hardware Maintenance, and/or equipment pursuant to Sections 4.2 and 5.2 which DSO provided to DSOP on open account totaling $101,324.00 in racking and unracking fees and power cords, and another $70,760.50 for a build out of and upgrades to the Pad 2 facility.

23. The contract authorizes late fees equivalent to 1.5% of the amount due accruing on a monthly, compounding basis until the principal amount due and all late fees are paid in full pursuant to Section 4.2.

24. The initial rack/unrack fee totaled $31,540.00 and became due on November 1, 2023. Additional rack/unrack fees were incurred in August 2024 and November 2024, totaling $12,070.00 and $2,790.00 in principal, respectively. DSO also provided an initial supply of power cords/cables totaling $37,848.00 in November 2023 and a second set of power cords/cables totaling $17,076.00 in April 2024 that were supposed to be provided by DSOP. To date, DSO has not received any of the amount due. As of May, 2025, DSOP owed DSO an additional $50,032.17 in late fees associated with past due amounts of racking/unracking fees, and $14,547.62 in late fees for provided power cords/cables. All of these late fees are related to hardware and facility maintenance. These late fees continue to accrue at the rate of 1.5% compounding monthly.

25. The Pad 2 buildout totaled $70,760.50 and became due in April 2024. To date, DSO has not received any of the amount due for the Pad 2 buildout. As of May, 2025, DSOP owed DSO an additional $15,111.08 in late fees associated with past due amounts for the Pad 2 buildout. These late fees continue to accrue at the rate of 1.5% compounding monthly.

26. In addition to the above, DSOP failed to timely make a majority of the payments referenced in Section 6.2 to DSO, thus authorizing late fees pursuant to Section 6.4 for such payments at the rate of 1.5% compounding monthly.

27. DSOP failed to make the abovementioned payments as required under the Hosting Agreement.

28. DSO notified DSOP in writing, via its agent Basham Johnson, that the amounts were past due and requested payment, including the fees that continued to accrue as a result of DSOP's past due payments.

29. Despite these notifications and demands, DSOP has failed to make the required payments.

30.     As a result of DSOP's failure to pay, DSO terminated the contract on March 19, 2025, and provided written notice of the same to DSOP. *See* Termination Letter, as Ex. B. The following April was the first time DSO had ever heard from Brandon Bryan as a purported member owner of DSOP. Until that time, all communications were through Onyx member owners Johnson and Rogers, who previously held themselves out at owner members of DSOP as well.

31.     Upon termination, DSO was also contractually due the minimum termination fee of $500,000.00 pursuant to Section 7.3.

32.     Additionally, DSO was contractually due DSOP's Deposit late fee as contemplated by Section 6.3. The Deposit late fee also continues to accrue at the rate of 1.5% compounding monthly as provided in Section 4.2. As of May 2025, the Deposit late fee totaled $147,178.39 and continues to accrue.

33.     DSOP also incurred $728,982.64 in consumption charges for April 2025. At the inducement of Defendants, DSO was informed that FUFU wired payment for the April 2025 consumption to Defendants for ultimate payment to DSO. However, Defendants never transferred the payment to DSO. To date, Defendants still maintain possession and control of those payment funds without any legal right.

34.     Defendants' actions and breach of contract has caused Plaintiff to suffer damages in the amount of $1,627,936.40 as of May 2025, which continue to grow.

### C.     THE FUFU CONNECTION

35.     In March 2025, DSO contacted FUFU directly. DSO learned that FUFU had been timely making all payments due under the DSO Hosting Agreement for Hosting Services. Those payments were sent via wire transfer to ELG at the direction of Onyx members Johnson and Rogers. On information and belief, those payments, pursuant to the terms of the FUFU Agreement,

were to be delivered by Onyx members Johnson and Rogers to DSO for the Hosting Services DSO ultimately provided to FUFU under the DSO Agreement.

36. In fact, FUFU was actually being charged $00.04 per kilowatt hour more by Defendants than the amount FUFU incurred under the terms of the DSO Hosting Agreement. Under the terms of the DSO Hosting Agreement, DSOP was permitted to charge at most an additional $00.01 per kilowatt hour more than consumed to FUFU. On information and belief, Defendants were pocketing the difference between what FUFU paid and what DSO ultimately received, which was far less than the contractually due amounts and far more than what DSOP was contractually allowed to up charge under the terms of the DSO Agreement. That amount equaled up to an additional $43,800.00 per month based on the contractual difference between the FUFU and DSO agreements alone. Defendants continued to withhold those funds from DSO without any legal right despite being past due and continuing to accrue.

37. On information and belief, FUFU has at all times timely paid to Onyx and/or DSOP all amounts due to DSO pursuant to the DSO Hosting Agreement.

38. On information and belief, all amounts due pursuant to the DSO Hosting Agreement were paid by FUFU to Onyx via ELG until approximately February 2025, at which time all payments ceased.

39. On information and belief, Defendants are in possession of and/or control funds received from FUFU and due to DSO by way for Hosting Services rendered by DSO ultimately to FUFU. Those funds are in excess of $1,627,936.40 as of May 2025. Defendants have no legal right to possess or otherwise control the abovementioned funds to which DSO is legally entitled.

40. Defendants were notified of DSO's legal right to funds in their possession and control and DSO demanded the said funds be surrendered to DSO. However, to date, Defendants refuse to do so despite DSO being the true owner of the subject funds.

41. On information and belief, some if not all of the subject funds have been transferred to one or more of the Defendants.

42. On information and belief, Defendants caused the subject Agreements to be entered into without ever intending to fulfill the contractual obligations.

43. On information and belief, Defendants caused the subject interstate wire transfers to occur with the intent to divert funds to themselves of which they have no legal right.

## CLAIMS FOR RELIEF

### Count I – Breach of Contract

44. DSO reasserts the allegations set forth in the preceding paragraphs as if fully restated herein.

45. A valid and enforceable contract existed between DSO and DSOP.

46. DSOP breached the contract by failing to make the required payments and fees.

47. DSOP's failure to pay continued after DSO notified DSOP that the amounts were past due.

48. DSO has suffered damages as a direct result of DSOP's breach of contract.

49. DSO has incurred financial losses due to DSOP's failure to pay as required under the contract. DSO demands judgment in its favor and against Defendants in the amount of $1,627,936.40 as of May 2025, which continue to grow together with costs, penalties, and all other damages.

**Count II – Unjust Enrichment / Quantum Meruit**

50. DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

51. Additionally, and alternatively, Defendants received a valuable benefit in the form of labor, materials, services, and goods from DSO for which they did not earn and are not entitled to retain.

52. Despite repeated demands for payment, Defendants refuse to pay DSO the amounts owed.

53. The retention of the benefits by Defendants of the work and services performed and the goods, labor, and materials provided by DSO without compensating DSO for the same violates principles of justice, equity, and good conscience.

54. Accordingly, DSO demands judgment in its favor and against Defendants for unjust enrichment, making them liable to DSO for the outstanding balance of $1,627,936.40 as of May 2025, which continues to grow together with costs, penalties, and all other just and proper relief.

**Count III – Conversion**

55. DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

56. Additionally, Defendants have demonstrated an intent to exercise dominion or control over the subject funds that is inconsistent with DSO's rights as the true owner of the same.

57. Accordingly, DSO demands judgment in its favor and against Defendants for conversion, making them liable to DSO for the full value of all rightful DSO funds in their possession, the total being at least $1,627,936.40 as of May 2025, which continues to grow together with costs, penalties, and all other just and proper relief.

**Count IV – Fraud**

58.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

59.     Defendants knowingly made materially false representations to DSO and others including but not limited to FUFU with the intent that those representations be relied upon, inducing DSO and FUFU to enter into the abovementioned contracts and make the interstate wire transfers that are the subject of this lawsuit.

60.     Additionally, and alternatively, any interstate wire transfer in violation of the Mississippi Uniform Fraudulent Transfer Act is presumed to be fraudulent.

61.     Accordingly, DSO demands judgment in its favor and against Defendants for fraud, making them liable to DSO for the full amount of the funds due to DSO, the total being at least $1,627,936.40 as of May 2025, which continues to grow together with costs, penalties, and all other just and proper relief including attorney's fees and punitive damages.

**Count V – Civil Conspiracy**

62.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

63.     Defendants have conspired to deprive DSO of the amounts due to it under the DSO Hosting Agreement that remain outstanding and payable.

64.     Accordingly, DSO demands judgment in its favor and against Defendants for civil conspiracy making them liable to DSO for the full amount of the funds due to DSO, the total being at least $1,627,936.40 as of May 2025, which continues to grow together with costs, penalties, and all other just and proper relief including attorney's fees and punitive damages.

**Count VI – Violations of the United States' Racketeer Influenced and Corrupt Organization (RICO) Act**

65.    DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

66.    The funds that are the subject of this lawsuit were transmitted by means of international and interstate wire transfers as part of a scheme to defraud DSO and others by means of false pretenses, representations, and/or promises in violation of 18 U.S.C. § 1343.

67.    The underlying actions and/or inactions of Defendants amount to a pattern of racketeering activity as defined by 18 U.S.C. § 1961 and prohibited by 18 U.S.C. § 1962.

68.    DSO demands judgment against Defendants for all available damages, including an award of treble damages, incurred, costs, and attorney's fees, as authorized by 18 U.S.C. § 1964.

**Count VII – Violations of Mississippi's Fraudulent Transfer Act**

69.    DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

70.    DSO is entitled to recover from Defendants any transfer made in violation of the Mississippi Uniform Fraudulent Transfer Act (the "Act"), Miss. Code Ann. § 15-3-101, *et seq*.

71.    To the extent any of the subject transactions qualify as transfers under the Act, Defendants made them with the actual intent to hinder, delay, and/or defraud DSO and others. Thus, DSO is entitled to "avoidance" (recovery) of the transfer or obligation of the Defendants to the extent necessary to satisfy DSO's claim(s).

72.    Defendants made the transfers without receiving a reasonably equivalent value in exchange for the transfer, and the Defendants intended to incur or believed or reasonably should have believed that they would incur debts beyond their ability to pay as they became due. Thus, in

light of the nature of said transfers, they give rise to a strong presumption of fraud which can only be rebutted by clear and convincing evidence.

73.     Accordingly, DSO demands judgment in its favor and against Defendants for fraudulent transfers, making them liable to DSO for the full amount of the funds due to DSO, the total being at least $1,627,936.40 as of May 2025, which continues to grow together with costs, penalties, and all other just and proper relief including attorney's fees and punitive damages.

## Count VIII – Negligence

74.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

75.     In the alternative, Defendants' actions and/or inactions were negligent and, as a result, DSO has suffered damages by incurring substantial utilities costs / consumption charges for the mining operations that underlie this lawsuit, among other things.

76.     Accordingly, DSO demands judgment in its favor and against Defendants for negligence making them liable to DSO for all damages, costs, penalties, and all other just and proper relief.

## Count IX – Gross Negligence

77.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

78.     Defendants actions and/or inactions were willful, wanton, reckless, intentional, and with complete disregard for DSO and others and, thus, amount to gross negligence.

79.     Accordingly, DSO demands judgment in its favor and against Defendants for gross negligence making them liable to DSO for all damages, costs, penalties, and all other just and proper relief.

**Count X – Negligent Retention and Supervision (against Onyx and DSOP)**

80.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

81.     Agents of Onyx and DSOP participated in the above described actions and/or inactions which furthered negligent, grossly negligent, and/or fraudulent activities while in the course and scope of their role as an agent of their respective principals.

82.     Onyx and DSOP knew or should have known of their agents' incompetence and/or unfitness.

83.     Thus, Onyx and DSOP were at minimum negligent if not also grossly negligent in retaining their agents and/or failing to supervise their agents' dealings.

84.     Accordingly, DSO demands judgment in its favor and against DSOP and Onyx for negligent retention and/or supervision making them liable to DSO for all damages, costs, penalties, and all other just and proper relief.

**Count XI – Penalties and Attorney's Fees**

85.     DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

86.     In addition to the compensatory and exemplary damages above, Defendants are liable to DSO for pre-judgment interest on the outstanding principal amount of $1,401,067.14 pursuant to Mississippi Code Annotated § 75-17-7, with said interest beginning to accrue, at the legal rate of 8% per annum, when that amount became liquidated. That amount was liquidated no later than March 19, 2025, when DSO issued its termination letter. Such interest continues to accrue.

87.    Pursuant to Mississippi Code Annotated § 11-53-81, DSO is entitled to reimbursement of its reasonable attorney's fees and costs, because DSO has been forced to file this suit against Defendants on open accounts, and because Defendants lack legitimate justification for withholding funds from DSO for the valuable goods and services DSO provided to Defendants.

88.    DSO further prays for any applicable post-judgement interest that might become due.

<strong>Count XII – Punitive Damages</strong>

89.    DSO realleges and incorporates the allegations set forth in the preceding paragraphs as if fully restated herein.

90.    Defendants' actions and inactions clearly and convincingly evince actual malice and gross negligence; the actions were willful, wanton, and exhibited reckless disregard for the rights of DSO and others; Defendants have committed actual fraud; and DSO has demonstrated actual damages. Thus, punitive damages are warranted.

91.    DSO requests that this Court hold an evidentiary hearing to determine the appropriateness of punitive damages and, upon finding that they are appropriate, submit the question of punitive damages to the fact finder pursuant to Miss. Code Ann. § 11-1-65.

**WHEREFORE, PREMISES CONSIDERED,** DSO demands judgment against Defendants on each of the separate claims set forth above in the principal amount of not less than $1,627,936.40, in addition to pre- and post-judgment interest at the legal rate, prompt payment of all penalties and late fees that continue to accrue, an award of all costs, attorney's fees, and expenses incurred by DSO in bringing this action, as well as threefold damages and punitive damages. DSO further requests such other relief this Court deems just and proper under the circumstances.

**JURY TRIAL DEMANDED**

DATED: July 1, 2025.

Respectfully submitted,

**DEEP SOUTH OPERATING LLC**

By: *s/J. Miles Forks*
OF COUNSEL

Wilton V. Byars III – MSB #9335
wbyars@danielcoker.com
J. Miles Forks – MSB #105080
mforks@danielcoker.com
DANIEL COKER HORTON & BELL, PA
265 North Lamar Blvd., Ste R
Post Office Box 1396
Oxford, Mississippi 38655-1396
Telephone: (662) 232-8979
Facsimile: (662) 232-8940