**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**DEEP SOUTH OPERATING LLC.**                                               **PLAINTIFF**

**v.**                                                           **No. 1:25-cv-00109-MPM-RP**

**DSO PROJECTS LLC,** *et al.*                                         **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This cause comes before the Court on Defendants', DSO Projects LLC; Onyx Digital Farms LLC; Basham Johnson; Paul Rogers; and Brandon Bryan (collectively "Defendants"), Motions to Dismiss [28], [29] and their Motions to Strike [44], [48], [51]. Plaintiff Deep South Operating LLC ("DSO") has responded in opposition to the motions. The Court, having reviewed the record and applicable case law, is now prepared to rule.

**RELEVANT BACKGROUND**

DSO is a Mississippi Limited Liability Company whose sole member is an Alabama resident. Defendants Deep South Operating Projects ("DSOP") & Onyx Digital Farms LLC ("Onyx") are Alabama LLCs whose members are Alabama residents. DSOP's known member is Brandon Bryan, and Onyx's members are Basham Johnson and Paul Rogers. DSO operates a host facility in Iuka, Mississippi where it contracted with clients to operate hardware for cryptocurrency mining.

On October 11, 2023, DSOP contracted with DSO through a Hosting Agreement to install and to operate hardware to mine cryptocurrency on behalf of their client BitFufu Inc. ("FUFU") a digital currency mining service based in Singapore. The only parties to the Hosting Agreement contract were DSO and DSOP. Under the Hosting Agreement, DSO's responsibilities included providing a hosting facility, electrical services, and a  fiber optic internet service. DSOP's obligations included shipping, installing and mounting computer hardware; purchasing technical

and fire safety equipment for DSO; removing hardware in case of the contract's termination; and monitoring the cryptocurrency mining operation. The Hosting Agreement also outlined a list of obligated fees DSOP was required to pay DSO and when those fees would accrue, increase, and be due. The Hosting Agreement required DSOP to pay DSO a power deposit prior to the beginning of the mining operations, and for DSOP to pay DSO's monthly bill within seven days of an invoice. In the event of nonpayment, DSO could charge a monthly 1.5% penalty on any unpaid balances. The Hosting Agreement outlines its effectiveness to begin October 1, 2023, for a period of 36 months, and it included an automatic 12-month renewal unless either party opted out. The Hosting Agreement provided DSO the right to terminate the contract if DSOP violated the terms of the agreement and failed to cure within seven days of written notice.

DSO alleges that Rogers and Johnson served as middlemen where they contracted with DSO to provide mining services for their own client, FUFU, and that FUFU paid Rogers and Johnson through Onyx for the mining services with the expectation that Rogers and Johnson would pay DSO. Despite their obligation to pay, DSO asserts DSOP left multiple payments unpaid or partially paid. DSO lists numerous instances of unpaid fees owed by DSOP through 2023 and 2024.[1] At the time of the Complaint, DSO asserts their damages caused by Defendants' actions amount to over $1.6 million. DSOP explained that the nonpayment of fees on their end was caused by FUFU's failure to send them the funds. DSO relied on DSOP's representations and continued to provide their services in hopes of being paid once FUFU delivered the payments.

In March 2025, DSO decided to contact FUFU directly. DSO then learned that FUFU had been making timely payments pursuant to the Hosting Agreement. FUFU explained that they sent

---

[1] DSO outlines these unpaid amounts as follows: "$511,000 past due as of December 1, 2023; $37,480.00 due on November 1, 2023; $12,070.00 on August 1, 2024; $2,790.00 on November 1, 2024; $17,076.00 due April 1, 2024; and $70,760.50 due April 1, 2024." [39].

all payments via international wire transfer to Environmental Litigation Group PC ("ELG"), a law firm serving as Onyx's financial service, at Onyx's direction. While DSO was only contracted with DSOP, Onyx services handled the transfer of funds related to the Hosting Agreement. FUFU's payments wired to ELG were to be delivered by Johnson and Rogers to DSO for the hosting services provided. DSO asserts that FUFU paid Defendants all amounts and fees due to DSO pursuant to the Hosting Agreement, and that Defendants misrepresented to FUFU that DSO received the funds, while Defendants instead withheld payment from DSO as part of a scheme to defraud them. DSO asserts that Defendants maintain possession of the funds owed to them, and that in the course of their investigation with FUFU, Mr. Bryan threatened DSO with legal action for alleged ethical and legal violations as a means of allegedly obscuring Defendants' scheme.

DSO now files suit against Defendants for multiple state claims such as breach of contract, unjust enrichment, conversion, fraud, civil conspiracy, violations of Mississippi's Fraudulent Transfer Act, negligence, gross negligence, and negligent retention and supervision. DSO also asserts that Defendants violated the United States' Racketeer Influenced and Corrupt Organizations (RICO) Act pursuant to 18 U.S.C. § 1964. Defendants filed motions to dismiss DSO's RICO claims for failure to state a claim and DSO's remaining state claims for lack of subject matter jurisdiction. To support their assertions, DSO provided the declaration of Brock Tompkins, the managing member of BBR Ventures LLC, the sole owner of DSO. [38] ex. 1. In response, Defendants also filed motions to strike Mr. Tompkins' declaration.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint and raises an issue of law. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

Where fraud is averred in a plaintiff's claim or part of a claim, Rule 9(b) mandates a heightened pleading standard in addition to the general pleading standard set by Rule 8. Fifth Circuit Court of Appeals precedent interprets Rule 9(b) strictly, which means the 'who', 'what', 'when' and 'where' of the alleged fraud must be laid out before access to the discovery process is granted. *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 207 (5th Cir.2009) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.1997)).

The additional pleading standard will apply "by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). This means Rule 9(b)'s scope of application includes claims rooted in fraud or misrepresentation in addition to claims of fraud. *Lone Star Fund V(US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Rule 9(b) particularity requirement applies to pleadings of fraud serving as predicate acts in a RICO claim. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).

## ANALYSIS

### I.     Motions to Strike

In addressing the Defendants' Motions to Strike [44], [48], [51], the Court will note that all three motions request the same outcome: to strike or at minimum to disregard the Declaration of Brock Tompkins attached to DSO's response. [38] ex. 1. The parties agree that the Brock Tompkins declaration is a matter outside of the pleadings. "If the Court considers the matters outside the pleadings, 'the motion must be treated as one for summary judgment under Rule 56,' and '[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion.' Fed. R. Civ. P. 12(d). However, 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

DSO asserts that the Court should consider Brock Tompkins' Declaration (the "Declaration") because Defendants' motion to dismiss made assertions that forced DSO to provide the Declaration to dispute them and that the declaration may be weighed to resolve factual disputes in the Court's subject matter jurisdiction determination. Additionally, DSO is specifically requesting that the Court use the Declaration and evaluate Defendants' motion to dismiss under the Rule 56 summary judgment standard, but Defendants oppose this conversion.

Defendants' motion to dismiss asserts that DSO's complaint and the other pleadings fail to assert an actionable RICO claim under Rule 12(b)(6). DSO claims that the motion to dismiss invites a Rule 12(d) analysis because it presents matters outside of the pleadings. [50]. In reviewing the motion to dismiss, the Court fails to find matters outside of the pleadings presented in the motion. Defendants' attempts to point to deficiencies in the pleadings as they relate to DSO's RICO

5

claims are not matters that invite the Declaration to refute as claimed by DSO. The Complaint and the RICO statement, as required under Local Rule 83.8(a) and (b) of this Distrct, form the basis of the pleadings. Defendants' motion to dismiss merely points to perceived failures in these documents, and for Rule 12(b)(6) purposes, the Court finds no reason to consider the Declaration when analyzing the sufficiency of DSO's RICO claim. DSO's request to convert the Defendants' motion to dismiss into a Rule 56 motion is denied.

As to the 12(b)(1) aspect of Defendants' motion to dismiss, DSO claims the Declaration should be considered in response to Defendants' challenge to the Court's jurisdiction. The Fifth Circuit addressed subject matter jurisdiction attacks as follows:

> A facial attack on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A factual attack, however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Moreover, a factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). Here, to the extent Defendants' 12(b)(1) challenge can be considered a factual attack, the Court will consider the Declaration, but the Court will exclude the Declaration in any facial attacks raised by the Defendants. As a result, the Court will not strike the Declaration from the record. It will expressly exclude and disregard the Declaration from its 12(b)(6) analysis. The Court will not disregard the Declaration to the extent Defendants raise a factual attack against the Court's subject matter jurisdiction.

## II.     Motions to Dismiss

Defendants' motions to dismiss assert that DSO's civil RICO claim should be dismissed for failure to state a claim, which subsequently deprives this Court of subject matter jurisdiction

over the remaining state law claims. Normally, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack" prior to any other attack. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

In this instance, the Court possesses supplemental jurisdiction over DSO's state law claims, which are subject to the Defendants' 12(b)(1) attack, based on DSO's raised RICO claims. Neither party disputes that a valid RICO claim, pursuant to 18 U.S.C. § 1964, would provide this Court subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and that the parties to this dispute are not diverse for 28 U.S.C. § 1332 purposes. As a result, so long as DSO's RICO claim is validly before the Court, then this Court may exercise supplemental jurisdiction over DSO's remaining state law claims. Suffice it to say, the Court will evaluate the Defendants' Rule 12(b)(6) attack on DSO's RICO claims before making any determinations as to its subject matter jurisdiction over DSO's remaining claims.

### a. Civil RICO Claims

Defendants assert that DSO failed to state sufficient factual assertions in its RICO allegations to support a claim for relief. Under 18 U.S.C. § 1964, "a civil RICO plaintiff must show (1) a violation of § 1962, (2) an injury to his or her business or property, and (3) that such injury was proximately caused by a RICO violation." *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023) (internal citation omitted). "The independent requirements of injury and causation are referred to as prudential standing." *Id.* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)). Defendants claim that DSO has not sufficiently pleaded these elements to support its RICO claim, particularly since the RICO claim asserted is based in fraud.

7

To determine a violation of § 1962 for RICO purposes, under all subsections the plaintiff must show "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). No party disputes that Defendants are a "person"[2] for § 1962 purposes, so the Court will treat this element as met. Defendants argue that DSO failed to show a pattern of racketeering activity in their pleadings. The Court will evaluate whether DSO's pleadings adequately show the last two elements of a § 1962 violation.

"A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). "Racketeering activity" includes acts such as wire fraud and bank fraud, indictable under 18 U.S.C. §§ 1343-44. 18 U.S.C. § 1961(1). Wire fraud claims require that the plaintiff "prove that a defendant knowingly participated in a scheme to defraud, that interstate wire communications were used to further the scheme, and that the defendants intended that some harm result from the fraud." *U.S. v. Powers*, 168 F.3d 741, 746 (5th Cir. 1999). Bank fraud claims require the plaintiff to establish "that the acts alleged exposed the custodial bank 'to the risk of loss, i.e., ... to civil liability.'" *Crowe v. Henry*, 115 F.3d 294, 299 (5th Cir. 1997).

Here, Defendants claim that DSO failed to plead the alleged pattern of racketeering activities with sufficient particularity due to the assertion of fraud in their claims. As to the allegations within the pleadings, DSO asserts that Defendants conducted a scheme to defraud DSO through wire fraud. DSO's Rico Statement [3] specifically names Defendants and alleges that after

---

[2] "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

executing the Hosting Agreement, Defendants were obligated to pay specific fees to DSO, and despite their obligation to pay DSO, Defendants maintained that they were merely waiting on FUFU to transfer the necessary funds to pay them for their hosting services.

Additionally, DSO alleged that Defendants, serving as a middleman, were paid by FUFU for DSO's services, and that they made out to FUFU through interstate and international electronic communications that DSO received the payments and that DSO was capable of increased mining capacity to induce FUFU to send more payments. DSO has yet to be paid their deposit and other payments related to their facility expansions and services made at Defendants' request. DSO alleges that Defendants attempted to prevent them from contacting FUFU and threatened them with legal action in response to what Defendants' claim were "significant legal and ethical violations." [3]. At this stage of the litigation, DSO's pleadings have alleged a scheme the Defendants knowingly participated in to defraud DSO, they used interstate wire communications to commit the scheme, and Defendants intended DSO to be harmed by providing services without receiving the agreed on pay. *See Powers*, 168 F.3d at 746. Despite Defendants claims to the contrary, the Court finds that DSO has sufficiently alleged wire fraud with sufficient particularity.

As to the bank fraud claims, DSO is unable to raise a valid claim against Defendants. DSO is not a financial institution, and while there is no binding Fifth Circuit precedent on the matter, courts in this Circuit have consistently held that "only financial institutions may claim bank fraud under 18 U.S.C. § 1344 as a predicate for RICO purposes." *See Belton v. Regions Bank NA*, No. CV 24-722-JWD-RLB, 2025 WL 2466694, at *9 (M.D. La. Aug. 7, 2025), *report and recommendation adopted*, No. CV 24-722-JWD-RLB, 2025 WL 2466621 (M.D. La. Aug. 26, 2025); *see also Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 696 (S.D. Tex. 2010); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566

9

B.R. 815, 851 (W.D. Tex. 2017). DSO's bank fraud assertion is invalid, but as DSO adequately pleaded the predicate act of wire fraud then this Court will continue the analysis of DSO's RICO claims excluding any alleged bank fraud.

To establish a pattern of racketeering activity, "a plaintiff 'must show that the racketeering predicates are *related*, and that they amount to or pose a threat of *continued criminal activity*.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc. v. Northwestern Bell Telephone, Co.*, 492 U.S. 229, 239 (1989)). "The element of relatedness is established if the acts have the same or similar purposes, results, participants, victims, or methods of commission." *Id.* The continuity of the racketeering activity or its threat "may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Id.* "A closed period of conduct may be demonstrated by proving a series of related predicates extending over a substantial period of time." *Id.* An open period of conduct is a "threat of continued racketeering activity," which "may be shown where there exists a specific threat of repetition extending indefinitely into the future, or where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.*

DSO's asserts that Defendants' predicate acts make up an open-ended period of conduct. [39]. Defendants allegedly engaged in multiple instances of wire fraud and used electronic communications to induce FUFU to pay for DSO's services, by representing to FUFU that their payments were being sent to DSO, when in fact many of the payments that were sent via international and interstate wire transfers remained in the possession of the Defendants. DSO particularly claims that this collection of wire transfers and misrepresentations were part of an open-ended common scheme by the Defendants which by its nature projects into the future the

10

threat of repetition to misappropriate the funds owed to DSO and sent by FUFU. When DSO began investigating, and contacted FUFU, Mr. Bryan contacted DSO and threatened legal actions to obstruct DSO's investigation. These threats signify that Defendants engaged in practices to prevent the discovery of their scheme, to continue their racketeering activity.

DSO asserts that Defendants' repeated acts occurred over a series of months during the period outlined in their contract and that the scheme had no set end date due to the automatic renewal option listed in their agreement. Defendants argue that this is insufficient to establish a closed or open period because the alleged RICO scheme only affected a limited number of victims, and DSO could have terminated the contract for non-payment within the first month of the contract rather than allowing the situation to continue for over a year.

At this stage of the proceedings, to determine continuity, the Court must determine if DSO sufficiently pleaded the existence of a scheme that would have continued but for its discovery. Here, DSO alleged multiple predicate acts that Defendants engaged in under the guise of the Hosting Agreement between them. Defendants' use of a contract to facilitate predicate acts does not automatically disqualify them from potential RICO liability. Additionally, DSO has notified the Court of the existence of at least two other pending actions against Defendants for "substantially similar activity" in federal courts.[3] [39] n. 8. This showing by DSO suggests to the Court that there may be more victims of this alleged scheme that may be found in discovery, and that Defendants engage in these predicate acts as part of their regular conduct in their legitimate

---

[3] DSO cites to the following actions to show that additional activity may be ascertained through discovery: *Northern Data NY LLC v. Onyx Digital Farms LLC*, Case. No. 2:24-cv-00772-ACA (N.D. Ala. June 12, 2024); *Northern Data NY LLC v. Paul Rogers*, Case. No. 2:24-cv-00771-ACA (N. D. Ala. June 12, 2024).

business. *See Sawyer*, 90 F.3d at 122. Defendants' scheme pleaded by DSO is sufficient to show RICO continuity.

DSO's pleadings indicate that the predicate acts targeted the same victims of DSO and FUFU and were performed for the same purpose of unlawfully retaining the money paid by FUFU for DSO's services. The predicate wire fraud acts are sufficiently related. *See id.* As a result, DSO has established a pattern of racketeering activity in this matter.

"An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan*, 319 F.3d at 229. "The enterprise may be a legal entity or 'any union or group of individuals associated in fact although not a legal entity.'" *Id.* (citing 18 U.S.C. § 1961(4)). "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Id.*

DSO outlines the enterprise in this case to constitute DSOP and Onyx, and the enterprise was formed for the common purposes of engaging in wire fraud to misdirect funds. DSO claims that DSOP and Onyx, both of which are LLCs, are managed by Johnson, Rogers, and Bryan, who, while separate from the enterprise, allegedly used the two companies as operational vehicles for their schemes, as all contracting occurred through DSOP while all payments were sent and received by Onyx. [3]. DSO asserts that Johnson, Rogers, and Bryan are member owners of Onyx and DSOP, are directly associated with the enterprise as officers, agents, and participants of its operations and that they are the active perpetrators of the alleged racketeering activity. [3]. The nature of DSOP and Onyx as LLCs indicates that they are legal entities separate from the predicate acts even though the alleged function of the LLCs were solely to continue Defendants' racketeering scheme. *See Whelan*, 319 F.3d at 229. Defendants have not opposed the allegation that Onyx and DSOP are an enterprise so the Court finds that DSO adequately pleaded the enterprise's existence.

12

The Court finds that DSO has sufficiently plead with particularity the general elements to show a violation of 18 U.S.C. § 1962. DSO asserts that Defendants violated subsections (a), (c), and (d) of § 1962. The Court will analyze whether DSO's pleadings meet the substantive requirements to support the alleged violations of subsections (a), (c), and (d).[4]

"To state a claim under subsection (a), a plaintiff must allege an injury from the use or investment of racketeering income." *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007). "An injury arising 'solely from the predicate racketeering acts themselves is not sufficient.'" *Id.* (citing *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002)). DSO alleges that Defendants' racketeering activity allowed them to generate income by diverting the funds paid by FUFU for DSO to themselves. Johnson, Rogers, and Bryan purportedly used a portion of the funds for their own financial gain and to sustain their fraudulent scheme without the consent of FUFU or DSO. The injury from the use of the racketeering income consists of the funds that were owed to DSO, which Defendants withheld from DSO without any legal right. [3]. At this stage of the litigation, DSO adequately pleaded that they were injured by the use of the racketeering income by Defendants, as while the wire fraud predicate acts allegedly generated income for Defendants, the use of that income to solicit and induce DSO to perform more unpaid hosting services and to expand their hosting services, while withholding the contractually agreed on funds, is an injury cognizable under 18 U.S.C. § 1962(a). *See Nolen*, 293 F.3d at 929.

DSO asserts that Johnson, Rogers, and Bryan violated § 1962(c). 18 U.S.C. § 1962(c) "prohibits any person employed by or associated with any enterprise from participating in or

---

[4] The Court notes that Defendants' motions to dismiss analyze the general elements for § 1962 violations but fail to touch on the specific subsections they are alleged to have violated, so in analyzing the raised subsections, the Court will treat DSO's assertions as unopposed in this portion of the analysis.

conducting the affairs of the enterprise through a pattern of racketeering activity." *Abraham*, 480 F.3d at 357 (internal citation omitted). "To state a claim under subsection (c), a plaintiff must demonstrate ... that the RICO person is distinct from the RICO enterprise." *Id.* Here, DSO alleged the RICO enterprise as DSOP and Onyx, but the liable RICO persons are Johnson, Rogers, and Bryan who served as agents of the enterprise but are ultimately distinct entities for § 1962(c) purposes. [3]. This distinction combined with Johnson, Rogers, and Bryan holding themselves out as members, owners, and agents of DSOP and Onyx, and the fraudulent scheme they are alleged to have run through the enterprise is sufficient to state a claim under 18 U.S.C. § 1962(c).

DSO also asserts that Defendants conspired to violate § 1962(a) and (c). 18 U.S.C. § 1962(d) states "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Abraham*, 480 F.3d at 357. DSO's complaint claims that Defendants "conspired to deprive DSO of the amounts due to it" and the RICO Statement clarifies that Johnson, Rogers, and Bryan aimed to defraud DSO through a fraudulent and coordinated scheme involving a pattern of racketeering activity. [1] and [3]. These allegations suffice under 18 U.S.C. § 1962(d).

The Court finds that DSO adequately raised facts in its pleadings to show a violation of 18 U.S.C. § 1962 at this stage of the litigation. To determine if DSO's § 1964 claim survives the motion to dismiss, the Court will determine if the injury and causation prudential standing requirements are present. *See Lewis*, 83 F.4th at 956. As Defendants do not refute that DSO

14

experienced damages to its business,[5] the Court will limit its analysis to whether the causation requirement is met.

Defendants assert that DSO lacks standing to bring a RICO claim because DSO's damages were caused by a breach of contract and not any alleged RICO violation the Defendants committed. 18 U.S.C. § 1964(c) outlines the plaintiff's standing in this matter as follows: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." To establish causation, the plaintiff must show "both but-for and proximate causation." *Lewis*, 83 F.4th at 956. "Proximate causation examines 'whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits.'" *Id.* (citing *Lexmark*, 572 U.S. at 133). Fifth Circuit precedent requires that the "plaintiff must demonstrate that the alleged [RICO] violation led directly to the injuries." *Id.* (citing *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784-85 (5th Cir. 2020)).

DSO argues that it sustained injuries to its business in excess of $1.6 million as a "direct result of Defendants' racketeering activity." [39]. DSO claims that Defendants owed DSO payments on specific dates pursuant to the Hosting Agreement, which were never paid, but FUFU was paying Defendants the amount owed to DSO. Defendants then misrepresented to FUFU that their payments would be sent to DSO. Instead, Defendants diverted the funds for their own use and they misrepresented to DSO that they were still awaiting payment from FUFU to induce them to provide their hosting services. DSO asserts that each payment from FUFU that Defendants diverted for their own use without paying DSO constitutes a predicate act of wire fraud which directly injured DSO's business.

---

[5] Defendants' arguments are limited to whether DSO's damages were caused by any alleged RICO violations rather than whether DSO's business was injured in this matter.

15

Defendants claim that DSO's injuries are merely the result of a breach in their agreement and not due to any alleged racketeering activity. When taking the facts in the light most favorable to DSO, there is sufficient showing that Defendants' alleged scheme and wire fraud directly led to DSO's monetary losses and that harm was the intended consequence of Defendants' wire fraud scheme. *See Lewis*, 83 F.4th at 956. DSO established their prudential standing for their RICO claim.

The Court finds that DSO has sufficiently pleaded all elements to support a RICO claim pursuant to 18 U.S.C. § 1964. Defendants argue that DSO is merely parading breach of contract as a RICO violation. While possible, at this pre-discovery stage of the litigation, if the Court were to accept that as an absolute defense, then contracts would become the tool of choice for would-be racketeers to veil their schemes from the Court. Allowing racketeers to avoid RICO liability by baking in a breach of contract into their scheme would be a near insurmountable defense for plaintiff's raising legitimate Civil RICO claims. The use of a contract alone is not enough for this Court to discount a viable RICO claim, and as a result, DSO's RICO claim survives Defendants' motions to dismiss. The Court now turns to DSO's remaining state law claims.

### b. State Law Claims

Defendants assert that the Court lacks subject matter jurisdiction over DSO's state law claims. 18 U.S.C. § 1367(a) states "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Both parties agree that there is no complete diversity between them. As stated above, the Court's supplemental jurisdiction over DSO's state law claims hinged on whether DSO properly pleaded a RICO claim.

16

Neither party disputes that the Court has subject matter jurisdiction over a valid RICO claim, nor do they dispute that DSO's state law claims form part of the same case or controversy as the alleged RICO claim. Here, the parties disagreed on whether the RICO claim survived a Rule 12(b)(6) motion to dismiss. DSO's RICO claim survives the motions to dismiss, so this Court exercises its supplemental jurisdiction over all of DSO's remaining state law claims.

**CONCLUSION**

**ACCORDINGLY**, the Defendants' Motions to Strike [44], [48], [51] are **GRANTED in part** and **DENIED in part**, and Defendants' Motion to Dismiss [28], [29] are **GRANTED in part** as to DSO's bank fraud claims and **DENIED in part** as to DSO's remaining claims.

**SO ORDERED** this 18th day of June, 2026.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

17